(131 So. 803)

SOUTHERN RY. CO. v. VARNELL.

6 Div. 764.

Supreme Court of Alabama.

Dec. 18, 1930.

Rehearing Denied Jan. 22, 1931.

238

Ross, Bumgardner, Ross & Ross, of Bessemer, for appellee.

## ANDERSON, C. J.

The only point for decision is whether or not the intestate was engaged in interstate work at the time of his injury which resulted in his death so as to exclude this case from the operation of the state Workmen's Compensation Act (Code 1923, § 7534 et seq.).

It is undisputed that the intestate, Varnell, was a yard policeman or watchman, that he arrested or removed two hobos from a car of one of the defendant's trains, which had just been made up and which was destined for Meridian, Miss.; that some of the cars were intrastate, while others were interstate. That, after the intestate arrested the two hobos, he took them to a house or station some distance off, but still on the defendant's premises, and about twenty minutes after the arrest and while examining or searching them one of said hobos shot him, and he subsequently died from the result of the wound.

It is also undisputed as to the nature or character of the duties of the said Varnell. He was to police or guard the premises, including cars or trains made up or standing in the yard or upon the tracks, whether the trains or cars were interstate or intrastate, and it was his duty to keep trespass-

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellant.

ers off the defendant's property and to arrest trespassers on defendant's yard or trains.

We find nothing in the record to charge the intestate with any duty looking to the operation of trains or pertaining thereto or with furnishing material, making or repairing same, as an incident to the operation of the defendant's trains. In other words, we find nothing in the evidence to show or indicate that Varnell's duties were connected with or contributed to the operation of trains, as they were merely that of a local policeman or watchman, and in no way ' concerned with making up or operating trains or of doing work by giving signals or aiding, directly or indirectly, in the formation or movements of same, ' and, unless his duties related in some way as an aid in the operation of trains or in furnishing the necessities therefor such as fuel, water, etc., or in mending or repairing the machinery therefor, it cannot be said that he came within the influence of the Federal Employers' Liability Act (45 USCA §§ 51–59).

We realize that the border line is narrow in determining when an employee does or does not come within the federal statute and have always attempted to follow the decisions of the United States Supreme Court in passing upon this question, but which said court has generally been governed by the facts in each case without laying down a fixed standard or rule establishing the border line.

The case which has perhaps come nearer supplying a general rule or test as pointed out in Philadelphia & R. Ry. v. Di Donato, 256 U. S. 327, 41 S. Ct. 516, 65 L. Ed. 955, is the case of Pedersen v. Delaware R. R., 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125. But we do not think that said case, or any other one, by our highest court will bring a local policeman, whose duties, in no wise, relate to the operation of trains, within the influence of the federal statute. Delaware, L. & W. R. Co. v. Scales (C. C. A.)' 18 F.(2d) 73; Feaster v. Sou. R. R. (C. C. A.) 15 F.(2d) 540.

In the case of Philadelphia & R. Ry. v. Di Donato, supra, the employee was a watchman charged with the duty of flagging or signaling trains, and this, of course, related to the operation of trains. And, in the case of Philadelphia & R. Ry. v. Polk, 256 U. S. 332, 41 S. Ct. 518, 65 L. Ed. 958, the employee was a member of a train crew.

The case of Fitzgerald v. Great Northern Ry. Co., 157 Minn. 412, 196 N. W. 657, does support the contention that this intestate was within the Federal Employers' Statute, but we are not impressed with the soundness of the holding. For instance, the Minnesota court likens the case of a watchman to that of a pumpman or one who is drying sand for the use of the engines and overlooks the fact that supplying water and sand is one of the ingredients essential to the operation of trains, and the duty of doing so of necessity relates to the operation of trains.

The only other case we find which gives support to defendant's contention is one by the Louisiana Court of Appeals. Bordelon v. N. O. Terminal Co., 14 La. App. 60, 129 So. 452. There are two opinions in this case, and the one by Judge Janvier displays a most thorough investigation of the authorities, but this learned writer seems to have misconceived the decisions of the United States Supreme Court and has failed to observe that in said cases the employee had something to do with the handling or operation of the trains and whose duties were not solely of a police character and confined to a certain locality. Again, Judge Janvier gives much importance to the case of Bauchspies v. Cent. R. R. of N. J., 287 Pa. 590, 135 A. 728, but overlooks the fact that it was the duty of the employee to take care of the switches and signals at the crossing and of the batteries and other motive power equipment which operated them. Of course, the operation of the switch signals and the maintenance of same related to the operation of trains and required duties quite different from looking after the premises of defendant and protecting it and the trains from trespassers.

■ At any rate, our holding finds support by the United States Circuit Court of Appeals in the cases of Delaware L. & W. R. Co. v. Scales, 18 F.(2d) 73, and Feaster v. Sou. R. R., 15 F.(2d) 540, and we think that the holding that the federal act does not apply to a local policeman, whose duties are those of guarding and protecting the railroad's property within a certain locality, although the railroad may be engaged in interstate commerce, is sound and rational.

■ Moreover, if it be conceded that the intestate was engaged in interstate work when removing the hobos from the train and had been injured through the negligence of those in charge of the train that, under those circumstances, there would be a liability under the federal statute, yet this relationship had, in effect, terminated when he had taken them some distance off and was engaged in searching and questioning them a considerable time after the arrest. In other words, at the time he was shot the interstate relationship had terminated, if it ever existed.

The writ of certiorari is denied, and the judgment of the circuit court is affirmed.

GARDNER, BOULDIN, and FOSTER, JJ., concur.